CHAMPION SPARK PLUG CO. v. CHAMPION IGNITION CO. et al.

(District Court, E. D. Michigan, N. D.   November 22, 1917.)

No. 14.

1. COURTS ⊂⊃268, 276—FEDERAL COURTS—DISTRICT OF SUIT.
    The statutory provisions as to the particular district in which a suit shall be brought do not affect the general jurisdiction of the federal court over the suit, but give to the defendant a personal privilege as to the venue, which he may insist upon or waive.

2. COURTS ⊂⊃263—"COUNTERCLAIM ARISING OUT OF THE TRANSACTION WHICH IS THE SUBJECT-MATTER OF THE SUIT."
    In a suit for infringement of trade-mark and unfair competition, a counterclaim for infringement of patents, alleging that complainant's product, upon which it uses its trade-mark, is an infringement of such patents, is one "arising out of the transaction which is the subject-matter of the suit," which defendant is required to state in its answer by equity rule 30 (198 Fed. xxvii, 115 C. C. A. xxvii).

3. COURTS ⊂⊃263—JURISDICTION OF FEDERAL COURTS—DISTRICT OF SUIT—WAIVER.
    A complainant, who brings a suit in equity in a federal court in a district of which he is not an inhabitant, and in which he has no established place of business, is required to meet in such suit any counterclaim which the defendant may set up under equity rule 30, whether it arises out of the transaction which is the subject-matter of the suit, or is one which might be the subject of an independent suit in equity against him.

In Equity. Suit by the Champion Spark Plug Company against the Champion Ignition Company and Albert Champion. On motion by complainant to dismiss counterclaim. Motion denied.

Owen, Owen & Crampton, of Toledo, Ohio, for plaintiff.
Whittemore, Hulbert & Whittemore, of Detroit, Mich., for defendants.

TUTTLE, District Judge. This cause is before the court on motion of the plaintiff to dismiss a counterclaim, filed by the defendant, on the ground that this court is without jurisdiction to entertain such counterclaim in this suit.

Plaintiff, a Delaware corporation, having its principal office and place of business at Toledo, Ohio, outside of this district, filed its bill against the defendants, residents and inhabitants of this district, alleging that defendants had been guilty of infringement of the trademark of the plaintiff, consisting of the word "Champion" as applied to spark plugs for explosion engines, and had also committed acts of unfair competition in connection therewith; that plaintiff and its predecessors in business had been for 10 years last past continuously engaged in the manufacture and sale of spark plugs under the trade-name and trade-mark "Champion," the same having been applied during such period to the spark plugs themselves, to the cartons containing the same, and to circulars and advertising matter relating thereto, and having throughout that time been constantly used by plaintiff and its predecessors, and by jobbers, dealers, and purchasers to distinguish spark plugs made and sold by plaintiff and its predecessors in title and

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

business from those of other origin; that said trade-mark had been conspicuously printed on the cartons and packages in which said spark plugs were packed for shipment, and had also been permanently burned on the porcelain of the spark plugs themselves, and that said spark plugs so marked were being sold and shipped by plaintiff in interstate commerce; that it had always been the practice of plaintiff to manufacture and sell only the highest quality of spark plugs under its said trademark, using therein only the best materials and workmanship, and that said "Champion" spark plugs had throughout enjoyed a high reputation for efficiency and durability among the trade and automobile dealers generally, which reputation, associated with said trade-mark, was of great value to plaintiff and an important asset in its business; that the defendants were manufacturing and selling spark plugs closely imitating those manufactured by plaintiff; that said defendants were using the word "Champion" to indicate said spark plugs, and were advertising and selling their spark plugs as and for plaintiff's aforesaid Champion spark plugs; that plaintiff's and defendants' spark plugs are so similar in design and appearance as not to be readily distinguishable by the ordinary purchaser, so that said misrepresentation and misuse of plaintiff's trade-mark by defendants are especially injurious in that they enable defendants to confuse the purchasing public and to palm off defendants' for plaintiff's spark plugs; and that defendants' acts of unfair competition and infringement of plaintiff's trade-mark have resulted in great and irreparable damage and injury to the plaintiff and its business and in the reputation of its "Champion" spark plugs. The bill prayed for an injunction restraining the defendants from manufacturing, selling, or advertising spark plugs as "Champion" spark plugs, from infringing the said trade-mark, and from using the word "Champion" as a part of the name of defendant corporation on the cartons containing their spark plugs, or on the circulars or advertisements thereof, unless such name be accompanied by a statement, equally prominent as the word "Champion" in such name, to the effect that the plug contained in such cartons, or referred to in such circulars or advertisements, is not the "Champion" spark plug. The bill prayed also for the usual accounting.

The defendants filed an answer denying the allegations of the bill and added a counterclaim by the defendant corporation, Champion Ignition Company, alleging that said corporation was the owner of two certain patents under which it manufactured and sold its spark plugs; that after said defendant corporation had successfully introduced to the trade its said spark plugs, the plaintiff, which had previously been marketing spark plugs of a different character from those of said defendant corporation, wrongfully copied said defendant corporation's said spark plugs in infringement of said patents, and that in manufacturing and selling its spark plugs plaintiff is now infringing said patents; that plaintiff, in order to obtain information concerning the manufacture and construction of such spark plugs, wrongfully hired workmen who were in the employ of said defendant corporation to obtain for plaintiff such information, and that it wrongfully induced workmen and engineers to leave the employ of said defendant corporation

and enter the employ of plaintiff for the same purpose; and that plaintiff is wrongfully palming off its spark plugs on the purchasing public as and for defendant's spark plugs, both deceiving the public and injuring defendant corporation. The defendant corporation prayed for an injunction restraining the plaintiff from the acts of unfair competition alleged, and from infringing said patents, and for an accounting.

Plaintiff has moved for a dismissal of this counterclaim on the ground that it is not an inhabitant of this district and has no regularly established place of business in such district, and that, therefore, this court has no jurisdiction to entertain such counterclaim.

Section 24 of the Judicial Code provides that:

"The District Courts shall have original jurisdiction * * * of all suits at law or in equity arising under the patent, the copyright and the trade-mark laws." Act March 3, 1911, c. 231, 36 Stat. 1092 (Comp. St. 1916, § 991).

Section 48 of the Judicial Code provides that:

"In suits brought for the infringement of letters patent the District Courts of the United States shall have jurisdiction, in law or in equity, in the district of which the defendant is an inhabitant, or in any district in which the defendant, whether a person, partnership or corporation, shall have committed acts of infringement and have a regular and established place of business." Comp. St. 1916, § 1030.

Section 51 of the Judicial Code provides that:

"Except as provided in the six succeeding sections [none of which applies to patent suits] no civil suit shall be brought in any District Court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant." Comp. St. 1916, § 1033.

Rule 30 of the federal General Equity Rules (198 Fed. xxvii, 115 C. C. A. xxvii) prescribes the requisites of an answer and concludes as follows:

"The answer must state in short and simple form any counterclaim arising out of the transaction which is the subject-matter of the suit, and may, without cross-bill, set out any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him, and such set-off or counterclaim, so set up, shall have the same effect as a cross-suit, so as to enable the court to pronounce a final judgment in the same suit both on the original and cross claims."

It is, of course, clear that suit for the infringement alleged in the counterclaim could not have been maintained against the plaintiff company on a bill filed against it in this district, as such company is not an inhabitant of, and has no regular place of business in, this district. The question presented is whether, in view of the language of rule 30, just quoted, the plaintiff by filing its bill in this district so subjected itself to the jurisdiction of this court in this suit that such counterclaim may be maintained against it.

Rule 30 is a new rule, and the question here presented has not yet been determined by the Supreme Court. The District Courts are in cönflict in their construction of the language of such rule here involved. I have found only one decision by a court of appeals in point— that of the Circuit Court of Appeals for the Seventh Circuit in the case of United States Expansion Bolt Co. v. H. G. Kroncke Hardware Co., 234 Fed. 868, 148 C. C. A. 466, to which I shall hereinafter refer.

[1] It seems to be well settled that, as stated by the court in General Electric Co. v. Wagner Electric Manufacturing Co. (C. C.) 123 Fed. 101:

"The limitation as to the district of residence of defendant, or of place of business and acts of infringement, relates merely to the place of suit, and may be waived." General Electric Co. v. Wagner Electric Manufacturing Co., supra; United States Consolidated Seeded Raisin Co. v. Phœnix Raisin Seeding & Packing Co. (C. C.) 124 Fed. 234; Thomson-Houston Electric Co. v. Electrose Manufacturing Co. (C. C.) 155 Fed. 543; United States Expansion Bolt Co. v. H. G. Kroncke Hardware Co., 234 Fed. 868, 148 C. C. A. 466.

As was said by the United States Supreme Court, in referring to certain statutory provisions prescribing the venue of a certain kind of action, in the case of Interior Construction & Improvement Co. v. Gibney, 160 U. S. 217, 16 Sup. Ct. 272, 40 L. Ed. 401:

"The provision as to the particular district in which the action shall be brought does not touch the general jurisdiction of the court over such a cause between such parties, but affects only the proceedings taken to bring the defendant within such jurisdiction, and is a matter of personal privilege, which the defendant may insist upon, or may waive, at his election."

Plaintiff concedes that:

"There would be some reason for contending that a plaintiff waives his right to object to the jurisdiction of the court to determine a counterclaim 'arising out of the transaction which is the subject matter of the suit,' inasmuch as he may properly be charged with knowledge of the counterclaim and be held to have assumed that it would be presented in the answer."

It contends, however, that the cause of action set up in the counterclaim has no relation to the cause of action set up in the bill of complaint, that it might properly be made the subject of an independent suit against plaintiff if not set up as a counterclaim, and that therefore plaintiff cannot be said to have waived its right to object to the jurisdiction of the court to entertain such counterclaim.

[2] It will be noted that rule 30 contemplates two different kinds of counterclaim, the one a counterclaim "arising out of the transaction which is the subject-matter of the suit," which counterclaim it requires the defendant to state in the answer, the other a counterclaim "which might be the subject of an independent suit in equity against" the plaintiff, which latter kind of counterclaim it merely permits, without requiring, the defendant to litigate in the same suit. Considering the allegations of the bill, answer, and counterclaim already referred to, it seems clear that this counterclaim does arise out of the transaction which is the subject-matter of the suit. The bill alleges that the defendants, by the acts complained of, are injuring the plaintiff's business. This business consists in the sale of certain spark plugs. If, therefore, the plaintiff has no right to sell these spark plugs, because it thereby infringes the defendant's patents, it cannot justly complain that the defendant has injured it by depriving it of, or decreasing, the sale of such spark plugs. This consideration is perhaps strengthened by the allegations in the bill concerning the similarity in appearance of the spark plugs of plaintiff and defendants respectively, in fact, the questions as to the trade-mark, unfair competition, and patents raised

and involved are so interwoven, and all so connected with the sale by plaintiff of its alleged infringing spark plugs, that the conclusion that they all arise out of the transaction which is the subject-matter of the suit seems to me to be irresistible.

This being so, the defendant corporation was compelled by the rule in question to present its counterclaim in this suit. This the plaintiff must be assumed to have known when it filed its bill in this district. Consequently it must be held to have waived its right to object to the jurisdiction of this court to consider such counterclaim.

This same question was involved in the case of United States Expansion Bolt Co. v. H. G. Kroncke Hardware Co. (D. C.) 216 Fed. 186. That was a patent infringement suit. Defendant by counterclaims charged infringement of certain patents owned by it and also unfair competition by plaintiff in making and illustrating its articles, so as to resemble those of the defendant, with the purpose of deceiving the public and injuring defendant. Plaintiff applied for an order striking out these counterclaims on the ground that it was not an inhabitant of the district in which the suit had been brought, and had no regular and established place of business in such district, and that therefore such court had no jurisdiction over the subject-matter of such counter-claims. In overruling this contention and denying the motion, the District Court said:

"As I understand it, the act of 1897 does not relate primarily to the jurisdiction of the federal court, but is rather a provision affecting the place of the suit or venue. The District Court is given jurisdiction of suits for the infringement of patents, and the act of 1897 has for its object the fixing of the proper place of suit. This statute was passed for the benefit and convenience of defendants in patent suits, and confers the privilege upon them to have the suit tried either in the district of their residence, or where they may have committed acts of infringement and have an established place of business. Not relating strictly to jurisdiction, but rather to the place of suit, this privilege is subject to waiver. * * * Plaintiff, having brought a suit in this district, thereby subjected itself to any counterclaim or set-off which is fairly within the equity rule above quoted. The counterclaims pleaded in the answer grew out of the very same transactions and matters covered by the original bill. The three patents referred to in the answer upon expansion bolts are all along the same line, and the question of unfair competition is intimately connected with the rights of the respective parties under these patents. These matters ought to be all disposed of in one suit, as they relate to questions very closely connected together."

This decision was affirmed by the Circuit Court of Appeals, 234 Fed. 868, 148 C. C. A. 466. In its opinion, that court said:

"While suit could not, in the first instance, have been maintained in Wisconsin by the Diamond Expansion Bolt Company against appellant over its objection upon either the Pleister or the Cook patent, we have no doubt but that appellant waived that objection by its action in bringing the suit in the Wisconsin district as well as by statements of counsel shown on pages 1085 and 1087 of the record in the premises with regard to the patents of the counterclaims. The proceeding was one for infringement of a patent in each case. Of such a case some federal court had jurisdiction. So that no question of federal jurisdiction is involved. Appellant had the right to waive the question of privilege, and did so. We think the District Court proceeded properly to treat those matters as coming within the provisions of new equity rule 30 as pertaining to the matter of jurisdiction in equity, and not to federal jurisdiction."

In the case of Buffalo Specialty Co. v. Vancleef (D. C.) 217 Fed. 91, the court had under consideration the construction of rule 30, and, while the precise question here involved was not there presented, in the course of its opinion the court used the following language:

"It is said in argument that it could not have been the intention of the rule to compel a nonresident plaintiff to submit to cross-suits in districts foreign to his residence, and thus run counter to express statutes, like section 51 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1101 [U. S. Comp. St. Supp. 1911, p. 150]), or Act March 3, 1897, c. 395, 29 Stat. 695 (U. S. Comp. St. 1901, p. 588), relating to place of suit. Section 51 provides that civil suits, other than those of diverse citizenship, shall only be brought in the district where defendant inhabits, the others only in the district of the residence of either party. The act of 1897 applies only to patent cases, and provides that the court shall have jurisdiction only in the district where defendant inhabits, or where he has committed infringement and has an established place of business. But these acts do not relate to the general jurisdiction of the District Court, only to the power of the particular court to proceed. They give defendant a privilege which he may waive."

I have no doubt that the counterclaim arose out of the transaction which is the subject-matter of this suit, and that the plaintiff has waived its right to object to the jurisdiction of this court to entertain such counterclaim.

[3] I think, also, that even if this counterclaim did not arise out of such transaction, but might, under the rule, have been the subject of an independent suit in equity against the plaintiff, the same result would have followed, and the court would have had jurisdiction to consider it in this suit. The obvious purpose of the new equity rules is the simplification of procedure and the elimination of unnecessary and inequitable technicalities. It would seem that there could be no valid reason why a plaintiff, who has voluntarily gone into a district outside that in which he is an inhabitant and begun a suit, should not be required to meet any claim in equity which the defendant in such suit may have against him. There is nothing in the language of the rule which restricts the right of a defendant in filing a counterclaim to any particular district. The language used is quite plain, and clearly authorizes such defendant to "set out any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him." The subject-matter of the present counterclaim certainly might have been the subject of such independent suit. If, therefore, the plaintiff must be held to have known that the defendant was compelled, and therefore permitted, to litigate in this suit any counterclaim arising out of the transaction which is the subject-matter of such suit, and that consequently by filing its bill in this district it waived its right to object to the jurisdiction of this court over such counterclaim, why should it not also be held that, in view of the right granted by this rule to a defendant to set out any set-off or counterclaim which might be the subject of an independent suit in equity against the plaintiff, the plaintiff must have known that such right existed, that such set-off or counterclaim might be presented against it if it filed its bill, and that, therefore, by filing such bill in this district, it waived its privilege of objecting to such jurisdiction? It seems to me that plaintiff, having selected this court as the forum of

a suit against the defendants must, in view of this rule, be considered to have known that it was submitting to this court in this suit any disputes or issues between it and the defendants cognizable in a federal court of equity, and that it. should not now be permitted to split up such disputes and issues and withdraw a part thereof from this court and claim the benefit of its own demands while denying to defendants the right to try out all of the equitable controversies between these parties. It is clear that it was the purpose of this rule to give to defendants this very right.

I am aware that a few District Courts have held that this rule does not permit the filing of a set-off or counterclaim in a suit unless the subject-matter of such counterclaim might, under the previous practice, have been pleaded by a cross-bill, and that the only effect of this rule is to allow a defendant to use its answer as a substitute for a cross-bill, by setting out in such answer, as a counterclaim, any matter which theretofore might have been alleged by its cross-bill, but only if it be so germane to the issues in suit that it might previously have been pleaded by a cross-bill. . I cannot, however, agree with this view, which, it seems to me, disregards both the purpose and the clearly expressed language of the rule. If this language means anything, it means that in such answer a defendant may set out any counterclaim, which might be the subject of an independent suit in equity, and that the subject-matter of such counterclaim is not limited to matters which might, under the old practice, have been the subject-matter of a cross-bill. Marconi Wireless Telegraph Co. of America v. National Electric Signaling Co. (D. C.) 206 Fed. 295; Electric Boat Co. v. Lake Torpedo Boat Co. (D. C.) 215 Fed. 377; Goodno v. Hotchkiss (D. C.). 230 Fed. 514; Harper Brothers v. Klaw (D. C.) 232 Fed. 609. As was said in Electric Boat Co. v. Lake Torpedo Boat Co., supra:

"To so confine the right to counterclaim, in my judgment, is .to unduly limit the meaning of the term 'cross-bill' as used in such rule, disregard the manifest .intent to distinguish between the kinds of counterclaims that must or may be set up in the answer, and to overlook entirely the plain purpose of the new rules to permit the parties to settle their differences in one suit, provided they can be conveniently disposed of together. Under the old system of pleading, a cross-bill was necessary to obtain for the defendant affirmative relief touching the matter of the original bill. A cross-bill, however, was not permitted unless it was based on or grew out of the subject-matter of the original bill. It was treated as a mere auxiliary suit or as a dependency upon the original suit. * * * The 'counterclaim arising out of the transaction which is the subject-matter of the suit,' and which, under the rule, must be set up in the answer, covers, broadly stated, all matters which heretofore could have been pleaded by cross-bill. Therefore to limit the option given to the defendant to 'set out any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him' to such claims as must be set up is to make the option fruitless. * * .* Therefore the limitation upon what counterclaim may be set up is not that it must have arisen out of the transaction which is the basis of the original bill; that character of counterclaim having been already completely covered by the preceding clause, but that the subject-matter thereof be such as 'might be the subject of an independent suit in equity' against the plaintiff."

For the reasons stated, I am of the opinion that the plaintiff has subjected itself to the jurisdiction of this court to entertain and dis-

pose of the counterclaim in question and that it has waived its right to now object to such jurisdiction. The motion to dismiss such counterclaim is therefore denied.